(No. 75-CV-152— )

In Re Application of Marguerite Ziemba.

*Opinion filed October 28, 1975.*

Thomas R. Bobak, Attorney for Claimant.

William J. Scott, Attorney General of Illinois; Peggy Bastas, Assistant Attorney General.

Per Curiam.

Claimant seeks compensation for alleged medical and hospital expenses. She has submitted her claim pursuant to the provisions of the Crime Victims Compensation Act, (Ill.Rev.Stat., 1973, Ch. 70, Sec. 70, 71, et seq.) (hereafter referred to as the "Act").

The Court entered an Order on March 18, 1975, [based on the Investigatory Report of the Attorney General, the Application and the form submitted by the Claimant] which Order found that the Claimant was not a victim of a crime as defined in the Act.

Pursuant to Section 9 of the Act, the Claimant requested a hearing.

Evidence was taken by the Court at a hearing conducted by Martin C. Ashman, a Commissioner of this Court.

The Claimant testified that on March 18, 1974, at approximately 11 o'clock p.m., she was arriving home after having been with other ladies at a cocktail lounge. As she attempted to get out of the car she was clubbed over the head and she does not remember anything thereafter until she woke up in the hospital. She was told that the police had brought her there. She suffered a broken nose and broken right arm and cuts on her left temple. Thereafter she was treated in St. Margaret's Hospital, Hammond, Indiana, and by her family doctor.

In addition to the above mentioned ailments, she received a bad sprained ankle and scraped the flesh off one of her knees.

Prior to the alleged attack she was unemployed having had a history of heart problems.

As a result of the attack her glasses were broken and her purse was missing.

On cross-examination she admitted having had one bottle of beer to drink that evening. She did not recall talking to any police, nor did she recall describing her assailant because she did not see her assailant at all. She was unconscious that entire evening and early morning and does not remember any of the events until she was in the hospital.

The Respondent called as its witness an officer of the Village of Lansing Police Department, Henry S. Roberts. The officer testified that on March 17, 1974, the police received a call from a neighbor of the Claimant stating that the Claimant had been hurt in some way. The police received the call at 3 o'clock a.m. The weather was "dampish", having rained earlier. When the officer arrived the Claimant was in the home of the neighbor. He observed that the Claimant was muddy, had a split lip and scraps on her knees and was bleeding. The Claimant was not coherent at the time. She could not reason out exactly what happened. She said that someone was out to get her, and that she had been beaten, and described the assailant as a man in his forties, about 5'7" tall. First she said she was getting out of the car and was attacked, and then she stated she was dragged out of the car.

The officer upon investigation found nothing at the scene of the alleged incident except spots of blood leading from the sidewalk to the neighbor's house. He could find nothing on the ground that indicated a struggle. He could find no footprints other than the footprints of the Claimant leading from the driveway to the neighbor's house. He did not find any broken glasses. He did not find any purse and interrogated the neighbor who said that the Claimant had not brought her purse into the home. The car keys were in the car.

The officer stated that the Claimant had a very strong odor of alcohol on her breath.

At 6:30 a.m. on the same day, the officer interrogated the Claimant again. The Claimant was not sure at that time if she was hit or pushed. She described her assailant as a big man with an ugly face. The officer could not find any indication of any attack having taken place. No neighbors heard any screams or saw anything. No arrests were made as a result of the incident. On cross-examination, the officer testified that when he arrived at

the neighbor's home, the Claimant was lying on the couch and was mumbling incoherently, and gave conflicting stories. He did not know if the neighbor had given the Claimant anything to drink.

The road in front of the home was an improved road, and he did not recall if the driveway upon which the car was standing was improved although admitting that if it was improved there would, of course, be no footprints to be found.

The Chief of Police of the Village of Lansing, Dean R. Stanley, testified that he became acquainted with the Claimant through numerous complaints from her residence over the years.

From the evidence the Court considers it to be clear that the Claimant was indeed the victim of a violent crime. While she gave conflicting stories to the Police Department immediately after the incident, and while she cannot remember anything of making these reports to the police, these inconsistencies are explainable by reason of the fact that the Claimant had suffered a severe blow upon the head. According to the police officer the Claimant was incoherent, or almost incoherent, at the time of his interrogation.

The fact that no neighbors heard any screams or saw any struggle does not cast doubt upon the Claimant's story whatever. Merely because a crime is not witnessed does not mean that a crime did not take place.

The lack of physical signs of a struggle is completely compatible with the Claimant's version of the incident inasmuch as no struggle took place. She was knocked unconscious without having had the opportunity of struggling.

The Claimant's story is corroborated by the fact that the police found the key to her automobile still in the

ignition. It is further corroborated by the fact that neither the police nor the neighbor saw the Claimant's purse.

The Court having had the opportunity of hearing the Claimant testify and having seen her demeanor on the witness stand, and taking into consideration all of the circumstances of the incident, must conclude that the Claimant was the victim of a violent crime as defined in Section 2(c) of the Act, to wit: "Battery", (Ill.Rev.Stat., 1973, Chap. 38, § 12-3).

There was no evidence of any provocation by the Claimant for the attack upon her. The criminal offense was promptly reported to law enforcement officials and the Claimant has fully cooperated with any requests for assistance. The Claimant and her assailants were not related nor sharing the same household.

As a result of the criminal attack, the Claimant suffered various medical expenses including expenses for replacement of four pair of eye glasses. This Court concludes that the repair of one pair of eye glasses is reasonable under the provisions of the Act.

Accordingly, the hospital and medical expenses of the Claimant are as follows:

| | |
|---|---|
| Medical and Drugs | $ 670.87 |
| Hospital | 624.80 |
| Total | $1,295.67 |

As the Claimant was unemployed at the time of the incident, she makes no claim for any lost earnings.

The Claimant received $332.71 from Blue Cross insurance.

In determining the amount of compensation to which a Claimant is entitled, Section 7(d) of the Act states that this Court:

(d) . . . shall deduct $200.00 plus the amount of benefits, payments or awards, payable under Workmans Compensation Act or from local governmental, state or federal funds or from any other source . . .

That after the statutory deduction of $200.00 plus the insurance benefits of $332.71, the Claimant's pecuniary loss is calculated to be $762.96.

It Is HEREBY ORDERED that the sum of $762.96 be awarded the Claimant, Marguerite Ziemba, an innocent victim of a violent crime.

It Is FURTHER ORDERED that the sum of $100.00 is reasonable considering the time invested by counsel and that therefore Thomas R. Bobak, attorney for the Claimant, may charge said amount to the Claimant pursuant to Section 12 of the Act.